IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **READE WHITNEY**, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:23-cv-02988-JMC |
| **DC SOCCER, LLC**, | ) ) ) |
| Defendant. | ) ) |

**DEFENDANT'S REPLY MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant DC Soccer, LLC d/b/a D.C. United ("D.C. United" or "the team"), by and through its undersigned counsel, hereby files this Reply Memorandum in Support of its Motion to Dismiss [ECF Dkt. No. 4].

**I.      INTRODUCTION**

In its Motion to Dismiss, D.C. United demonstrated that Plaintiff Reade Whitney's ("Whitney") defamation claims should be dismissed for two independent reasons. First, Whitney's defamation claims should be dismissed because they are premised on D.C. United's subjective interpretation of an ambiguous hand gesture, which falls squarely in the category of protected opinion. Second, even if the statements in question were actionable, the defamation claims would still be subject to dismissal because Whitney is a limited purpose public figure and he failed to plead facts from which actual malice could be inferred.

Whitney's Opposition [ECF Dkt. No. 5] does not save his claims. In his Opposition, Whitney contends that D.C. United should be liable for "misconstruing" Whitney's hand gesture, which he concedes is associated with white supremacists. To make such an argument, Whitney

1

has to ignore – and has to ask the Court to ignore – the well-established principle that statements attributing malicious intent to a person's behavior constitute nonactionable opinion. With respect to pleading malice, Whitney erroneously contends that conclusory boilerplate allegations parroting the definition of actual malice suffice.

The Court should dismiss the Complaint.

## II.     LEGAL ANALYSIS

### A.     D.C. United's Interpretation of Whitney's Hand Gesture is Protected Opinion.

As D.C. United demonstrated in its Motion to Dismiss, for a statement to be defamatory it must be provable as true or false. See Vindman v. Trump, No. CV 22-257 (JEB), 2022 WL 16758575, at *9 (D.D.C. Nov. 8, 2022). Unverifiable statements constitute opinions that cannot be challenged in a defamation lawsuit. Id.

It is well-established that one person's subjective interpretation of another's motives and intentions fall squarely into the category of protected opinion, even when those interpretations prove offensive to the person accused of malevolent motives. See, e.g., Florio v. Gallaudet Univ., 619 F. Supp. 3d 36, 46 (D.D.C. 2022) (assertion that plaintiff's conduct was racist was nonactionable opinion). Indeed, in its Motion to Dismiss, D.C. United cited more than a page of cases demonstrating that accusing someone of behaving with discriminatory or other hateful intent is nonactionable opinion. See ECF Dkt. No. 4, at 11-12.

Whitney ignores these cases and asserts that whether he harbored innocent or discriminatory motives when making the hand gesture is a provable fact.[1] Whitney argues that since he disputes D.C. United's interpretation of his motivations (along with the interpretation of

---

[1]     Whitney also seems to suggest that for D.C. United's statement to be an opinion the team was required to preface its statement that Whitney made a discriminatory hand gesture with a disclaimer clarifying it was the team's opinion. See Opp'n at 6. Such an assertion finds no support in the case law and Whitney cites none.

a sizeable segment of the commenting public), any opinion that contradicts his assertions of innocent intent is a false statement of fact.  Whitney's position defies the case law.  Indeed, if a defamation plaintiff accused of discriminatory intent could prove the accuser incorrect as a matter of fact, all of the cases D.C. United cited dismissing such defamation claims would have been decided differently.

Florio is analogous and Whitney's attempt to distinguish it fails.  In Florio, a university president called a fraternity "the face of systemic racism" after interpreting the fraternity's ceremonial hooded robes to be reminiscent of those worn by hate groups, and interpreting a hand gesture used by the fraternity to be reminiscent of a Nazi salute.  619 F Supp. 3d at 39.  The Court dismissed the fraternity members' defamation lawsuit because the university president's comment was her "interpretation" and "subjective view" and thus was nonactionable opinion.  Id. at 46.

In his Opposition, Whitney tries to distinguish his conduct from the fraternity members' conduct by contending the fraternity members were "obviously" using a Nazi-like salute and the hooded robes resembled "well-known [Ku Klux Klan] outfits." (Opp'n at 12.)  Whitney suggests his conduct was different because the hand gesture he flashed has only been associated with white supremacists since 2017, whereas the Nazi salute and hooded robes have more long-standing associations with hate groups.  Id.

Thus, Whitney's take on Florio is that the Court dismissed the defamation claim because the University president was correct in her interpretation of the fraternity members' behavior given the long-standing connections between the hand signal and robes, on the one hand, and hate groups on the other.  The Florio Court did not, however, dismiss the case because it agreed with the university president's interpretation.  Rather, the Court dismissed the case because the statement

in question constituted the university president's subjective interpretation of ambiguous hand gestures and clothing.

Florio compels the dismissal of Whitney's claims. Like the university president subjectively interpreting fraternity members' hand gestures and ceremonial clothing choices, D.C. United made a subjective interpretation of Whitney's hand gesture. D.C. United's interpretation of the hand gesture is just as much opinion as the university president's interpretation of the hand signals and clothing choices in Florio. Moreover, to the extent Whitney contends Florio stands for the proposition that the facts have to reasonably support the defendant's subjective interpretation, that standard would be met here. Whitney flashed a hand gesture classified by the ADL as a hate symbol and was the subject of public accusations of racism before the team terminated his employment. Thus, there was a reasonable basis for the team's interpretation of the hand gesture.

Fairbanks v. Roller, 314 F. Supp. 3d 85 (D.D.C. 2018), on which Whitney relies, is not to the contrary. In that case, journalist Fairbanks sued fellow journalist Roller for retweeting a photograph of Fairbanks in the White House making the "okay" hand gesture and labeling it a "white power" gesture. Id. at 88. The Court dismissed Fairbanks' defamation claim on the grounds that Fairbanks, as a public figure, failed to plead actual malice. Id. at 92-93. To the extent the Court's decision touched upon whether Roller's interpretation of the hand symbol was protected opinion, the Court in *dicta* noted both that (1) the question of whether Fairbanks displayed a "white power" symbol was ambiguous, and (2) "[w]here the question of truth or falsity is a close one, a court should err on the side of nonactionability." Id. at 92 (quoting Liberty Lobby v. Dow Jones & Co., 838 F.2d 1287, 1292 (D.C. Cir. 1988)). Given the lack of actual malice, however, the Court declined to "decide whether Ms. Roller's tweet constitutes a protected statement of opinion." Id. Thus, Fairbanks provides Whitney no solace.

4

D.C. United's statement that Whitney displayed a discriminatory hand gesture is nonactionable opinion.

**B.    D.C. United Did Not Imply Undisclosed Facts.**

Whitney contends that even if D.C. United's interpretation of the hand gesture as discriminatory was otherwise nonactionable opinion, the team's statement implied undisclosed facts that render it actionable. See Florio, 619 F. Supp. 3d at 46 (courts should assess, *inter alia*, whether the allegedly defamatory words are susceptible to proof of their truth or falsity and whether the statement could be said to imply undisclosed defamatory facts). Specifically, Whitney contends that D.C. United's statement that his termination was "the result of an internal review" was akin to "publicly [telling] the world that some sort of investigation was conducted." (Opp'n at 7.)

The fatal flaw in Whitney's argument is that D.C. United's statement did not state the team "investigated" before terminating; it simply stated there was an "internal review" of the situation. D.C. United's public statement is nearly identical to the one at issue in Cooper v. Templeton, 629 F. Supp. 3d 223 (S.D.N.Y. 2022), which the team addressed in its Motion to Dismiss and which Whitney's Opposition ignores. In Cooper, Franklin Templeton terminated an employee after a viral video emerged of the employee calling the police to claim a Black man was threatening her life after she got into a confrontation with him in Central Park. Franklin Templeton issued a statement which read: "Following our internal review of the incident in Central Park yesterday, we have made the decision to terminate the employee involved, effective immediately. We do not tolerate racism of any kind at Franklin Templeton." Id.

The employee sued for defamation but the court dismissed the claim. The court rejected the employee's argument that Franklin Templeton's statement implied it had investigated and

5

therefore had non-public reasons to conclude the employee was racist. Id. at 235-36. Instead, the Court concluded that the reference to an "internal review" meant nothing more than the employer internally reviewed the situation – which had been videotaped and was the subject of public comment – before making the termination decision. Id. at 236.

D.C. United's statement is nearly identical to the statement in Cooper. Contrary to Whitney's assertion, the team did not tell the world it conducted an investigation or implied it relied on facts undisclosed to the public. Rather, like Franklin Templeton, D.C. United stated merely that it conducted an "internal review" of the situation – which was the subject of a publicly circulated photograph and public commentary – before making the termination decision. D.C. United's statement that it reached its decision after reviewing the matter internally does not transform a nonactionable statement of opinion into a viable defamation claim.

### C. D.C. United's Statement of Values was Not Defamatory.

Finally, Whitney takes issue with D.C. United's affirmation of its values that "[t]here is no place for racism, homophobia, misogyny, or discrimination of any kind in our sport world and D.C. United do not tolerate any acts of this nature." As Whitney notes, D.C. United used identical language in a press release announcing the termination of a player's contract a few weeks after Whitney's termination, demonstrating it to be nothing more than a values-affirming statement. (See Compl. at ¶ 127.)

This statement is not actionable defamation for multiple reasons. First, it is a statement of D.C. United's opinion that racism, homophobia, misogyny and discrimination do not belong in the professional soccer world and the team will not tolerate it. Second, to the extent it is not a statement of opinion but rather a statement of fact, it is true – racism, homophobia, misogyny and discrimination should not have a place in professionals sports and D.C. United do not tolerate it,

as demonstrated by its termination of Whitney's employment and the player's contract referenced in the Complaint.

The Complaint should be dismissed.

**D.     Whitney is a Limited Purpose Public Figure and Fails to Plead Actual Malice.**

Whitney acknowledges that limited purpose public figures must plead actual malice to state a defamation claim.  See, e.g., Shive-Ayala v. Pacelle, No. CV 21-704 (RJL), 2022 WL 782412, at *3 (D.D.C. Mar. 15, 2022).  To determine whether a plaintiff is a limited purpose public figure, the Court should assess whether (1) there is a public controversy; (2) the plaintiff played a significant role in the controversy; and (3) the defamatory statement concerned the plaintiff's role in the controversy.  See Jankovic v. Int'l Crisis Grp., 822 F.3d 576, 585 (D.C. Cir. 2016) (internal citations omitted).

Whitney takes issue with each of the three factors.  First, Whitney's assertion that there is no public controversy cannot withstand examination of the extensive public controversy he alleges in the Complaint regarding the use of the controversial hand gesture.  Whitney's pleading demonstrates that the ADL has designated the hand gesture as a hate symbol, that there have been multiple high-profile investigations into the use of the hand symbol at United States military academies and within D.C.'s fire and emergency rescue service organizations, that Whitney's use of the hand gesture was met with public backlash, and that D.C. United's decision to terminate Whitney for flashing the hand gesture garnered significant press attention and public comment.  A public controversy is established.  Id. at 585-86 (A public controversy is one where "[people] actually were discussing some specific question," and where "the press was covering the debate, reporting what people were saying and uncovering facts and theories to help the public formulate some judgment.").

Second, Whitney's claim that he played no role in the controversy is contradicted by the Complaint. Whitney chose to flash what could be interpreted as a symbol of hate in a photograph on the National Mall during a professional soccer all-star event, which generated significant social media and press attention debating whether Whitney had used a discriminatory hand gesture. Whitney is at the center of this controversy. To the extent Whitney claims he could not have predicted his behavior would thrust him into the spotlight, the Supreme Court has made it clear that a person can become a public figure "through no purposeful action of his own." Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974); see also Lohrenz v. Donnelly, 350 F.3d 1272, 1281 (D.C. Cir. 2003) (female fighter pilot was a limited purpose public figure in the controversy of the role of women in combat aviation because of the media attention she attracted); Dameron v. Washington Magazine, 779 F.2d 736, 742-43 (D.C. Cir. 1985) (air traffic controller on duty the day of a plane crash became a limited purpose public figure in the controversy over the cause of the accident).

Third, Whitney argues that the Court must accept his claim that his hand gesture was an innocuous game, agree with Whitney that D.C. United "misconstrued" the hand gesture, and conclude that since D.C. United got it wrong the team's statement attributing discriminatory intent to Whitney lacks a nexus between Whitney and the public controversy. (Opp'n at 19.) Whitney misconstrues this element, which merely ensures "that the allegedly defamatory statement – whether true or not – is related to the plaintiff's role in the relevant public controversy." See Jankovic, 822 F.3d at 589. That standard is easily satisfied here because D.C. United's allegedly defamatory statement that Whitney flashed a discriminatory hand gesture – whether true or not – is related to his flashing an arguably discriminatory hand gesture in the context of a public controversy over the use of the hand gesture.

Given Whitney's status as a limited purpose public figure, the Court may dismiss the defamation claims because Whitney has not pled actual malice. See Viswanath, 646 F. Supp. 3d 78, 98 (D.D.C. 2022). To satisfy the actual malice standard, Whitney must plead facts that, if proven, would show by "clear and convincing evidence" that the speaker knew the statement was false, spoke with "a high degree of awareness of probable falsity," or "must have entertained serious doubts as to the truth" of the publication. Tah v. Glob. Witness Publ'g, Inc., 991 F.3d 231, 240 (D.C. Cir. 2021) ("The actual malice standard is famously daunting.").

In his Opposition, Whitney relies primarily on his conclusory, boilerplate allegations parroting the definition of actual malice, such as "Defendant's conduct . . . was outrageous" and "Defendant's publication was made with knowledge that the statements were false or with reckless disregard of whether they were false or not." (Opp'n at 20). Such conclusory allegations devoid of underlying facts are insufficient to plead actual malice. See Vindman, 2022 WL 16758575, at *10 (a limited purpose public figure "must plead nonconclusory facts alleging [that] the defendant knew its statement was false or questioned its truth."); Couch v. Verizon Commc'ns, Inc., No. 20-2151 (RJL), 2021 WL 4476698, at *5 (D.D.C. Sept. 30, 2021) (dismissing defamation claim because "conclusory statements as to the defendants' knowledge of or recklessness toward the truthfulness of their statements" fails to plead actual malice); Arpaio v. Zucker, 414 F. Supp. 3d 84, 91 (D.D.C. 2019) (dismissing defamation claim for failing to plead actual malice and noting that conclusory allegations that are "nothing more than a threadbare recital of the definition of actual malice" do "not come close to adequately pleading facts of actual malice.")

Whitney also claims actual malice is alleged through his contention that D.C. United failed to conduct an adequate investigation before reaching its conclusion. (Opp'n at 21-22). It is well-settled, however, that the failure to investigate before speaking, "even when a reasonably prudent

person would have done so, is not sufficient to establish . . . actual malice." Viswanath, 646 F. Supp. 3d at 98 (quoting Harte-Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. 657, 688 (1989)); see also Byd Co. Ltd. v. All. for Am. Mfg., No. 21-7099, 2022 WL 1463866, at *2 (D.C. Cir. May 10, 2022) (a failure to investigate before speaking will not support a finding of actual malice); Jankovic, 822 F.3d at 589 ("it is not enough to show that defendant should have known better; instead, the plaintiff must offer evidence that the defendant in fact harbored subjective doubt.").

As a limited purpose public figure, Whitney's failure to plead actual malice is fatal to his defamation claims. The Court should dismiss the Complaint.

### III. CONCLUSION

WHEREFORE, Defendant respectfully requests that the Court grant its Motion to Dismiss and dismiss the Complaint with prejudice.

DATED: December 8, 2023

Respectfully submitted,

*/s/ Daniel E. Farrington*

Daniel E. Farrington (#471403)
Fisher & Phillips LLP
1401 New York Avenue, NW, Ste. 400
Washington, DC 20005
Tel. (202) 429-3706
Fax (202) 978-3788
dfarrington@fisherphillips.com

*Attorneys for Defendant*