# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **READE WHITNEY**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:23-cv-02988-JMC |
| | ) |
| **DC SOCCER, LLC**, | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT'S STATEMENT OF POINTS AND
## AUTHORITIES IN SUPPORT OF ITS SECOND MOTION TO DISMISS

Daniel E. Farrington (#471403)
Fisher & Phillips LLP
1401 New York Avenue, NW, Ste. 400
Washington, DC 20005
Tel. (202) 429-3706
Fax (202) 978-3788
dfarrington@fisherphillips.com

*Attorneys for Defendant*

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................... 1
II.  FACTUAL BACKGROUND ........................................................................................ 2
III. LEGAL STANDARD .................................................................................................... 4
    A.   Standard on a Motion to Dismiss. ......................................................................... 4
    B.   Whitney Fails to Plead a Claim for Defamation. .................................................. 5
        a.   D.C. United's Interpretation of Whitney's Hand Gesture is Protected Opinion. ............ 5
        b.   Whitney Fails to Plead Actual Malice. ......................................................... 11
            i.   Whitney is a Limited Purpose Public Figure. ............................................ 11
            ii.  Whitney Did Not Plead Actual Malice. ..................................................... 13
IV.  CONCLUSION ............................................................................................................ 15

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Arpaio v. Zucker,
 414 F. Supp. 3d 84 (D.D.C. 2019) ................................................................................................14

Ashcroft v. Iqbal,
 556 U.S. 662 (2009) ........................................................................................................................4

Bell Atl. Corp. v. Twombly,
 550 U.S. 544 (2007) ........................................................................................................................4

Byd Co. Ltd. v. All. for Am. Mfg.,
 No. 21-7099, 2022 WL 1463866 (D.C. Cir. May 10, 2022) ........................................................14

Cooper v. Franklin Templeton Invs.,
 No. 22-2763-CV, 2023 WL 3882977 (2d Cir. June 8, 2023) ........................................................8

Cooper v. Templeton,
 629 F. Supp. 3d 223, 235 (S.D.N.Y. 2022) ........................................................................7, 9, 10

Couch v. Verizon Commc'ns, Inc.,
 No. 20-2151 (RJL), 2021 WL 4476698 (D.D.C. Sept. 30, 2021) ................................................13

Florio v. Gallaudet Univ.,
 119 F.4th 67 (D.C. Cir. 2024) ..............................................................................................5, 6, 8, 9

Florio v. Gallaudet Univ.,
 619 F. Supp. 3d 36 (D.D.C. 2022) ............................................................................................6, 8

Gertz v. Robert Welch, Inc.,
 418 U.S. 323 (1974) ........................................................................................................................5

Hindu Am. Found. v. Viswanath,
 646 F. Supp. 3d 78 (D.D.C. 2022) ..................................................................................5, 6, 13, 14

Jankovic v. Int'l Crisis Grp.,
 822 F.3d 576 (D.C. Cir. 2016) ........................................................................................11, 12, 13

Kahl v. Bureau of Nat'l Affairs, Inc.,
 856 F.3d 106 (D.C. Cir. 2017) ........................................................................................................4

Mason v. Am. Prospect, Inc.,
 No. CV 23-2238 (LLA), 2024 WL 4345855 (D.D.C. Sept. 30, 2024) ........................................12

Monge v. Univ. of Pa.,
  No. CV 22-2942, 2023 WL 3692935 (E.D. Pa. May 26, 2023) ................................................. 7

Montgomery v. Risen,
  197 F. Supp. 3d 219 (D.D.C. 2016) ........................................................................................ 7

Prater v. Hamline Univ.,
  No. 23CV00505KMMDJF, 2023 WL 6050277 (D. Minn. Sept. 15, 2023) ........................ 7, 10

Schifanelli v. Queen Anne's Cty. Bd. of Commrs,
  No. 21-1942, 2023 WL 3918679 (4th Cir. June 9, 2023) ........................................................ 7

Schifanelli v. Queen Anne's Cty. Bd. of Commrs,
  No. CV GLR-20-2906, 2021 WL 3681157, at *7 (D. Md. Aug. 18, 2021) .............................. 7

Shive-Ayala v. Pacelle,
  No. CV 21-704 (RJL), 2022 WL 782412 (D.D.C. Mar. 15, 2022) .............................. 11, 12, 13

Skidmore v. Gilbert,
  No. 20-CV-06415-BLF, 2022 WL 464177 (N.D. Cal. Feb. 15, 2022) ..................................... 7

Starks v. TULA Life, Inc.,
  No. 8:23-CV-4, 2023 WL 4763829 (D. Neb. July 26, 2023) ................................................... 7

Tah v. Glob. Witness Publ'g, Inc.,
  991 F.3d 231 (D.C. Cir.) ........................................................................................................ 13

Tannous v. Cabrini Univ.,
  No. CV 23-1115, 2023 WL 6465842 (E.D. Pa. Oct. 4, 2023) .................................................. 7

Vindman v. Trump,
  No. CV 22-257 (JEB), 2022 WL 16758575 (D.D.C. Nov. 8, 2022) .............................. 4, 6, 13

Wolverton v. Padgett-Patterson,
  No. 3:20-CV-1963, 2022 WL 452405 (M.D. Pa. Feb. 14, 2022) ............................................. 7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **READE WHITNEY**, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:23-cv-02988-JMC |
| **DC SOCCER, LLC**, | ) |
| Defendant. | ) |

**DEFENDANT'S STATEMENT OF POINTS
AND AUTHORITIES IN SUPPORT OF ITS SECOND MOTION TO DISMISS**

Defendant DC Soccer, LLC d/b/a D.C. United ("D.C. United" or "the team"), by and through its undersigned counsel, hereby files this Statement of Points and Authorities in Support of its Second Motion to Dismiss.

**I.      INTRODUCTION**

Amid an increased national focus on race relations in the United States and just days after public allegations of racist conduct were directed at a prominent D.C. United player, a photograph emerged on social media of the team's athletic trainer flashing a hand gesture the Anti-Defamation League associates with hate and white supremacy. Predictably, swift and public accusations of racism against the athletic trainer ensued.

D.C. United terminated the athletic trainer's employment and released a concise three-sentence statement. The statement (1) announced the termination, (2) explained it was the result of an internal review following the discovery of the discriminatory hand gesture in a photograph published across social media platforms, and (3) reiterated the team's commitment to its values in opposition to racism and other forms of hatred.

1

The athletic trainer sues. He claims D.C. United "misconstrued" his hand gesture. According to the athletic trainer, because D.C. United wrongly interpreted the hand gesture as discriminatory when his heart was pure, the team is liable for defamation. He is mistaken as a matter of law. The Court should dismiss the Complaint because D.C. United's statement interpreting the meaning of an ambiguous hand gesture is a nonactionable expression of opinion. Even if it were not, the Court should still dismiss the Complaint because the athletic trainer is a limited purpose public figure and failed to plead that D.C. United acted with actual malice.

## II.   FACTUAL BACKGROUND

D.C. United, Washington, D.C.'s Major League Soccer club, employed Plaintiff Reade Whitney ("Whitney") as an athletic trainer. (See Compl. at ¶¶ 21, 23.) On July 18, 2023, Whitney was captured in a group photograph taken on the National Mall in connection with Major League Soccer All-Star Week events making a hand gesture that is subject to both vile and innocuous interpretations. (Id. at ¶¶ 28-29, 31-32.) Specifically, Whitney was photographed making an upside down "okay" hand gesture, with his thumb and index finger forming a circle and his remaining three fingers extended. (Id. at ¶ 32.) The "okay" hand gesture has been increasingly adopted by white supremacists to convey a message of "white power." (Id. at ¶¶ 71-72). The Anti-Defamation League ("ADL") has officially classified the gesture a symbol of hate and there have been several notable investigations into the use of the gesture at the United States Military Academy at West Point, the Naval Academy, and within D.C. Fire and EMS. (Id. at ¶¶ 72; 101-102.)

Whitney's public display of this hand gesture came on the heels of a D.C. United player being publicly accused three days earlier of making racist statements. (Id. at ¶ 120.) The photograph of Whitney making the controversial hand gesture was circulated on social media, and

2

accusations quickly surfaced that Whitney's hand gesture was racist. (Id. at ¶¶ 33-34.) On July 21, 2023, D.C. United representatives informed Whitney the photograph was problematic given the hand gesture's connection to white supremacists. (Id. at ¶ 39.) Approximately, two hours later,[1] D.C. United terminated Whitney's employment and issued a public statement as follows:

> D.C. United have terminated the employment of the club's athletic trainer effective immediately.
>
> This termination is the result of an internal review following the discovery of a discriminatory hand gesture made by the individual that surfaced in a photograph published across social media platforms on July 20, 2023.
>
> There is no place for racism, homophobia, misogyny, or discrimination of any kind in our sport world and D.C. United do not tolerate any acts of this nature.

(Id. at ¶¶ 45-49.)

The Washington Post covered Whitney's termination, sparking further debate online about Whitney's intentions. (Id. at ¶¶ 51-61; 124-126.) Some readers interpreted Whitney's hand gesture as racist and expressed support for the team's decision to terminate him. (Id. at ¶¶ 51-61, 125-126.) Others took offense to D.C. United's decision, and presumably interpreted the hand gesture as innocuous. (Id. at ¶¶ 55, 56.)

Whitney maintains he made an "innocent but misconstrued hand gesture." (Id. at ¶ 122.) He contends the gesture was part of a game he plays where he punches fellow players if he can get them to look at the "okay" hand gesture positioned below his waist. (Id. at ¶¶ 75-76.) Whitney does not allege with whom he was purportedly playing this game when the photograph in question was taken.

---

[1] Whitney asserts that when D.C. United informed him of his termination, someone told him the team had completed their investigation. (See Compl. at ¶ 45.) Whitney claims without explanation that two hours was insufficient for D.C. United to investigate. (Id. at ¶ 95.) Nevertheless, Whitney does not make any allegations that D.C. United made public statements about any investigation.

## III.  LEGAL STANDARD

### A.  Standard on a Motion to Dismiss.

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all of the factual allegations in the Complaint and draw all reasonable inferences in the light most favorable to the plaintiff.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).  However, to survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and the complaint must have "enough facts to state a claim to relief that is plausible on its face."  Id. at 555.  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).  To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts sufficient to "'nudge [his or her] claims across the line from conceivable to plausible.'"  Twombly, 550 U.S. at 570.

Motions to dismiss play an "especially important role" in defamation claims.  Vindman v. Trump, No. CV 22-257 (JEB), 2022 WL 16758575, at *4 (D.D.C. Nov. 8, 2022).  "[T]he Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits."  Kahl v. Bureau of Nat'l Affairs, Inc., 856 F.3d 106, 109 (D.C. Cir. 2017) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) and N.Y. Times Co. v. Sullivan, 376 U.S. 254 (1964)).  "Early resolution of defamation cases under Federal Rule of Civil Procedure 12(b)(6) not only protects against the costs of meritless litigation, but provides assurance to those exercising their First Amendment rights that doing so will not needlessly become prohibitively expensive."  Vindman,

4

2022 WL 16758575, at *4 (quoting Palin v. N.Y. Times Co., 264 F. Supp. 3d 527, 533 (S.D.N.Y. 2017)).

      **B.    Whitney Fails to Plead a Claim for Defamation.**

The Complaint alleges that D.C. United defamed Whitney. To state a claim for defamation under District of Columbia law, a plaintiff "must allege (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." See Florio v. Gallaudet Univ., 119 F.4th 67, 73 (D.C. Cir. 2024) (quoting Competitive Enter. Inst. v. Mann, 150 A.3d 1213, 1240 (D.C. 2016)); Hindu Am. Found. v. Viswanath, 646 F. Supp. 3d 78, 97 (D.D.C. 2022) (internal citation omitted).

Whitney's Complaint fails to plead defamation claims because he has not alleged that D.C. United published a false statement of fact. Even if Whitney had plead a false statement of fact, his defamation claims would still fail because he is a limited purpose public figure who did not allege that D.C. United acted with actual malice.

      **a.  D.C. United's Interpretation of Whitney's Hand Gesture is Protected Opinion.**

The gravamen of Whitney's claims is his allegation that D.C. United "misconstrued" his hand gesture, branding it discriminatory when, according to him, it did not reflect discriminatory intent. Even if Whitney's claims of innocence are accepted as true, the law of defamation does not render D.C. United liable to Whitney for mistakenly interpreting the ambiguous hand gesture. This is because "[u]nder the First Amendment there is no such thing as a false idea." Gertz v. Robert Welch, Inc., 418 U.S. 323, 339 (1974).

Thus, to plead a viable defamation claim, Whitney must allege the existence of a "provably false" statement. See Florio, 119 F.4th at 77. "To be 'provably false,' a statement must either be factual or, if framed as an opinion, must 'imply a provably false fact or rely on facts that are provably false.'" Id. (quoting Mann, 150 A.3d at 1240)); see also Vindman, 2022 WL 16758575, at *9 ("For a statement to be false . . . it must be 'sufficiently factual to be susceptible of being proved true or false.'") (quoting Milkovich v. Lorain J. Co., 497 U.S. 1, 21 (1990)). Conversely, when a statement is "obviously unverifiable," it falls under the category of nonactionable opinion. Id. (citing Ollman v. Evans, 750 F. 2d 970, 987 (D.C. Cir. 1984)); Viswanath, 646 F. Supp. 3d at 100 (an expression of the speaker's views is a nonactionable statement of opinion).

The determination of whether a statement represents a fact or an opinion is a question of law. See Florio v. Gallaudet Univ., 619 F. Supp. 3d 36, 46 (D.D.C. 2022), aff'd, 119 F.4th 67 (D.C. Cir. 2024). In this case, Whitney's defamation claims pertain to D.C. United's statement that his termination resulted from "an internal review following the discovery of a discriminatory hand gesture made by the individual that surfaced in a photograph published across social media platforms on July 20, 2023." When "a speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, the statement is not actionable" because the allegedly defamatory words are not susceptible to proof of their truth or falsity. Id. D.C. United's assertion that Whitney's hand gesture was discriminatory falls squarely under the category of protected opinion.

The United States Court of Appeals for the D.C. Circuit recently reaffirmed that "politically charged epithets are often protected opinions lacking sufficient factual content to be provably false." Florio, 119 F.4th at 77. The Court of Appeals noted that it has "made this point repeatedly" in the context of defamation cases involving nonactionable statements of opinion that a person is "fascist" or a "Marxist." Id. Indeed, courts around the country consistently reject defamation

6

claims rooted in purportedly false accusations of racism, bigotry, and other pernicious motives because evaluating an individual's intentions involves a fundamentally subjective interpretation that cannot be definitively proven true or false. See Montgomery v. Risen, 197 F. Supp. 3d 219, 248 (D.D.C. 2016), aff'd, 875 F.3d 709 (D.C. Cir. 2017) (statements that plaintiff was a con artist and motivated by greed and ambition are nonactionable statements of opinion because they are not verifiable); Tannous v. Cabrini Univ., No. CV 23-1115, 2023 WL 6465842, at *8 (E.D. Pa. Oct. 4, 2023) (calling professor's tweets antisemitic and bigoted was nonactionable opinion); Prater v. Hamline Univ., No. 23CV00505KMMDJF, 2023 WL 6050277, at *12 (D. Minn. Sept. 15, 2023) (stating plaintiff's conduct was inconsiderate, disrespectful, and Islamophobic were non-verifiable, nonactionable expressions of opinion); Starks v. TULA Life, Inc., No. 8:23-CV-4, 2023 WL 4763829, at *3 (D. Neb. July 26, 2023) (statement that plaintiff is a racist and made hateful and racist remarks could not be objectively assessed to be true or false and thus was nonactionable opinion); Monge v. Univ. of Pa., No. CV 22-2942, 2023 WL 3692935, at *5 (E.D. Pa. May 26, 2023) (speculation that plaintiff acted with racist motive is nonactionable opinion); Skidmore v. Gilbert, No. 20-CV-06415-BLF, 2022 WL 464177, at *9 (N.D. Cal. Feb. 15, 2022) (calling plaintiff's Facebook post racist, xenophobic, and hateful were nonactionable protected statements of opinion); Wolverton v. Padgett-Patterson, No. 3:20-CV-1963, 2022 WL 452405, at *4 (M.D. Pa. Feb. 14, 2022) (accusing plaintiff of being a racist is not actionable defamation); Schifanelli v. Queen Anne's Cty. Bd. of Commrs, No. CV GLR-20-2906, 2021 WL 3681157, at *7 (D. Md. Aug. 18, 2021), aff'd sub nom. Schifanelli v. Queen Anne's Cty. Bd. of Commrs, No. 21-1942, 2023 WL 3918679 (4th Cir. June 9, 2023) ("one's personal belief that another is a 'racist' or 'liar' who is guilty of 'inciting violence' or engaging in a 'smear campaign' is fairly construed as statement of opinion that is incapable of being proven true of false"); Cooper v. Templeton, 629

7

F. Supp. 3d 223, 235 (S.D.N.Y. 2022), aff'd sub nom. Cooper v. Franklin Templeton Invs., No. 22-2763-CV, 2023 WL 3882977 (2d Cir. June 8, 2023) ("It is [well-settled] that an accusation of bigotry is a protected statement of opinion, rather than a defamatory statement of fact capable of being proven true or false."); Keisel v. Westbrook, 542 P.3d 536, 549-50, cert. denied, 554 P.3d 1097 (Utah 2024) (professional basketball player's statement that a fan's taunt was racist was a protected statement of opinion).

The recent Court of Appeals decision in Florio is on point. In that case, a controversy developed over a photograph of members of the Kappa Gamma fraternity at Gallaudet University making the Bellamy salute, which resembles the Nazi salute. 119 F.4th at 71. In spring 2020, the photograph resurfaced during a period of racial unrest on campus and the university president commented that the fraternity had "become the face of systemic racism" at the school. Id. at 71. The Washington Post covered the story in articles labeling the photograph "anti-Semitic" and stating it showed fraternity members "performing an apparent Nazi salute." Id. at 72.

Fraternity members sued the university president and the Washington Post for defamation, and the District Court dismissed the case on the grounds that the challenged statements were non-actionable opinion. 619 F. Supp. 3d at 39. The Court of Appeals affirmed, finding the phrase "systemic racism" to be "hopelessly imprecise" and "thus not provably false." 119 F.4th at 77. The appellate court found "the charges of racism and anti-Semitism" to be non-actionable opinion about "the salute photograph . . . that 'readers can easily judge [] for themselves." Id. at 77-78. Finally, the appellate court found the statement that plaintiffs were performing a Nazi salute (rather than the Bellamy salute, as they claimed) to be non-actionable opinion because of the "obvious similarities" between a Bellamy salute and a Nazi salute. Id. at 78.

Florio compels dismissal of Whitney's defamation claims. In both cases, organizations expressed their subjective interpretations of a photograph subject to contrasting readings. In Florio, that the gesture in the photograph bore similarities to both the Bellamy salute and the Nazi salute rendered an interpretation that it was a Nazi salute to be nonactionable opinion. Likewise, Whitney was photographed making a hand gesture he claims was part of a punching game but that he acknowledges bears obvious similarities to the hand gesture associated with white supremacy. Similarly, D.C. United's conclusion Whitney made a discriminatory hand gesture was an opinion based on a photograph viewers could judge for themselves, just as accusations of racism in Florio were opinion based on a photograph viewers could judge for themselves. Whitney's defamation claims cannot survive the Florio decision.

Cooper, from the Southern District of New York, is also instructive. In Cooper, a white woman then employed by Franklin Templeton was involved in a confrontation while walking her dog in Central Park with Christian Cooper, a Black man and birdwatcher. 629 F. Supp. 3d at 228. The confrontation culminated in the woman placing an emergency call to police, during which she claimed there was "an African-American man threatening [her] life." Id. A video of the incident was posted to social media, and quickly went viral. Id. The next day, Franklin Templeton terminated the woman and issued a statement, which read: "Following our internal review of the incident in Central Park yesterday, we have made the decision to terminate the employee involved, effective immediately. We do not tolerate racism of any kind at Franklin Templeton." Id.

The woman sued for defamation, claiming Franklin Templeton falsely branded her a racist. Id. at 228-29. But the district court dismissed the defamation claim, holding Franklin Templeton's interpretation of the plaintiff's conduct as racist was protected opinion. Id. at 235. Furthermore, the district court rejected the plaintiff's argument that Franklin Templeton's statement implied it

9

assessed her to be a racist based on an investigation when it had, in fact, failed to investigate. Id. The Court found nothing about the statement suggested Franklin Templeton's opinions rested on additional facts undisclosed to the public; rather, the statement merely referenced an "internal review" of the incident, which had been videotaped and which had already garnered public comment in the context of ongoing racial tensions in the country. Id. at 236.

Whitney's allegations closely mirror the circumstances in Cooper, and the same analysis applies. Much like Franklin Templeton, which issued a statement articulating its interpretation that its employee's videotaped behavior in Central Park was racially motivated, D.C. United released a statement expressing their interpretation that Whitney's photographed hand gesture was discriminatory. Furthermore, just as Franklin Templeton stated that its decision was reached after an "internal review of the incident," D.C. United's statement indicated that their decision followed an "internal review" after the photograph was published on social media. In both instances, the defendant employers conveyed opinions about their employees' motivations that are not legally actionable and made no public statements suggesting they possessed undisclosed information beyond the videotape and photograph, respectively.

Despite Whitney's assertion of pure intentions, D.C. United's interpretation of his hand gesture is fundamentally an opinion that cannot be legally challenged in a defamation suit. That D.C. United's statement was an expression of opinion is underscored by the context in which the incident occurred. Whitney himself acknowledges that the hand gesture can be interpreted in various ways, and public opinion, as detailed in the Complaint, was divided on whether his actions were motivated by discrimination. It is not surprising that different opinions were reached; interpreting an ambiguous hand gesture inherently relies on subjective assessments by the viewers. As a result, such interpretations qualify as constitutionally protected expressions of opinion. See,

10

e.g., Prater, 2023 WL 6050277, at *12 ("Indeed, the fact that people . . . hold different views about whether or not Ms. López Prater's conduct was Islamophobic or inappropriate further demonstrates the idea that the statements at issue are opinions that cannot be characterized, let alone proven, as true or false.")

D.C. United's statement interpreting Whitney's hand gesture as discriminatory was protected opinion. The Court should dismiss his defamation claims.

### b. Whitney Fails to Plead Actual Malice.

Even if Whitney had alleged a defamatory statement of fact, his Complaint would still be subject to dismissal. When a plaintiff is a limited purpose public figure, to state a claim for defamation he must allege actual malice. See, e.g., Shive-Ayala v. Pacelle, No. CV 21-704 (RJL), 2022 WL 782412, at *3 (D.D.C. Mar. 15, 2022). Whitney is a limited purpose public figure and he has not alleged actual malice. Accordingly, his defamation claims are deficient.

#### i. Whitney is a Limited Purpose Public Figure.

To determine whether a plaintiff is a limited purpose public figure, courts employ a three-part test. "First, the court must identify the relevant controversy and determine whether it is a public controversy. Second, the plaintiff must have played a significant role in that controversy. Third, the defamatory statement must be germane to the plaintiff's participation in the controversy." Jankovic v. Int'l Crisis Grp., 822 F.3d 576, 585 (D.C. Cir. 2016) (internal citations omitted).

All three factors are satisfied here. First, Whitney's Complaint demonstrates an ongoing public controversy over the use of the "okay" hand gesture and its ties to white supremacists. A public controversy is one where "[people] actually were discussing some specific question," and where "the press was covering the debate, reporting what people were saying and uncovering facts

11

and theories to help the public formulate some judgment." Id. at 585-86 ("courts often define the public controversy in expansive terms.")  As Whitney notes, white supremacists coopted the "okay" hand gesture, and the ADL has publicly declared it a symbol of hate.  In his Complaint, Whitney identified multiple high-profile investigations into the use of the gesture in United States military academies and within the District of Columbia's fire and emergency rescue services organizations.  The public controversy element is satisfied.  See, e.g., Mason v. Am. Prospect, Inc., No. CV 23-2238 (LLA), 2024 WL 4345855, at *13 (D.D.C. Sept. 30, 2024) (gender equity in the workplace qualifies as a public controversy).

  Second, Whitney played a prominent role in the controversy.  To evaluate whether the plaintiff played a significant role in the public controversy, courts examine, *inter alia*, the extent of press coverage and public reaction to the plaintiff's conduct.  See Shive-Ayala, at *4 (plaintiff played a significant role in controversy about cockfighting where she had been the subject of ongoing media attention).  In Whitney's case, he injected himself into the public debate by openly flashing the controversial hand gesture in a group photograph at a Major League Soccer All-Star Week event on the National Mall, which garnered significant public reaction and press coverage.  Specifically, Whitney alleges that almost immediately after the photograph was taken, public debate began online about whether he had used a racist hand signal, that the Washington Post published at least two articles that discussed his use of the hand gesture and its connection to white supremacists, and that public debate on the Washington Post articles was extensive.  Whitney's prominence in the controversy is established.

  The third element of the limited public figure test is easily satisfied.  D.C. United's alleged defamatory statement focused on Whitney's use of the controversial hand gesture.  See Jankovic, 822 F.3d at 589 ("The purpose of the germaneness inquiry is to ensure that the allegedly

12

defamatory statement – whether true or not – is related to the plaintiff's role in the relevant public controversy.")

Accordingly, Whitney is a limited purpose public figure for purposes of his defamation claims.

### ii. Whitney Did Not Plead Actual Malice.

Because Whitney is a limited purpose public figure, he must allege actual malice to state a claim for defamation even if he had plead a verifiably false defamatory statement. See Viswanath, 646 F. Supp. 3d at 98; Shive-Ayala, 2022 WL 782412, at *5. Yet, "[t]he actual malice standard is famously daunting." Tah v. Glob. Witness Publ'g, Inc., 991 F.3d 231, 240 (D.C. Cir.) (internal quotation omitted). It requires a plaintiff to show by "clear and convincing evidence" that the speaker knew the statement was false, spoke with "a high degree of awareness of probable falsity," or "must have entertained serious doubts as to the truth" of the publication. Id. Significantly, "it is not enough to show that defendant should have known better; instead, the plaintiff must offer evidence that the defendant in fact harbored subjective doubt." Jankovic, 822 F.3d at 589. Thus, to survive a motion to dismiss, a limited purpose public figure "must plead nonconclusory facts alleging [that] the defendant knew its statement was false or questioned its truth." Vindman, 2022 WL 16758575, at *10 (internal citation omitted); see also Couch v. Verizon Commc'ns, Inc., No. 20-2151 (RJL), 2021 WL 4476698, at *5 (D.D.C. Sept. 30, 2021) (dismissing defamation claim because "conclusory statements as to the defendants' knowledge of or recklessness toward the truthfulness of their statements" fails to plead actual malice).

Here, Whitney does not even attempt to allege D.C. United knew its interpretation of Whitney's hand gesture was false or that the team spoke with an awareness of probable falsity.[2] Instead, Whitney merely asserts that D.C. United failed to adequately investigate the situation. (See Compl. ¶¶ 95-103.)  However, the failure to investigate before speaking, "even when a reasonably prudent person would have done so, is not sufficient to establish . . . actual malice." Viswanath, 646 F. Supp. 3d at 98 (quoting Harte-Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. 657, 688 (1989)); see also Byd Co. Ltd. v. All. for Am. Mfg., No. 21-7099, 2022 WL 1463866, at *2 (D.C. Cir. May 10, 2022) (a failure to investigate before speaking will not support a finding of actual malice).

As a limited purpose public figure, Whitney's failure to plead actual malice is fatal to his defamation claims.  The Court should dismiss the Complaint.

---

[2] The Court may disregard Paragraph 118 of the Complaint, which states in conclusory terms that "Defendant's publication was made with knowledge that the statements were false or with reckless disregard of whether they were false or not."  Such an "allegation is nothing more than a threadbare recital of the definition of actual malice," and "does not come close to adequately pleading facts of actual malice." Arpaio v. Zucker, 414 F. Supp. 3d 84, 91 (D.D.C. 2019) (internal citation omitted) (dismissing defamation claim for failure to plead actual malice).

IV.     **CONCLUSION**

WHEREFORE, Defendant respectfully request that the Court grant its Second Motion to Dismiss and dismiss the Complaint with prejudice.

DATED: November 15, 2024                        Respectfully submitted,

*/s/ Daniel E. Farrington*

_____
Daniel E. Farrington (#471403)
Fisher & Phillips LLP
1401 New York Avenue, NW, Ste. 400
Washington, DC 20005
Tel. (202) 429-3706
Fax (202) 978-3788
dfarrington@fisherphillips.com

*Attorneys for Defendant*